**UNITED STATES of America, Appellee,**

v.

**Rickey Elijah BRYANT, Appellant.**

No. 80–1696.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 13, 1981.

Decided Feb. 11, 1981.

Dennis J. C. Owens, Kansas City, Mo., for appellant.

Cynthia A. Clark, Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before HEANEY, ROSS and ARNOLD, Circuit Judges.

ROSS, Circuit Judge.

Rickey Bryant brings this appeal from a judgment of conviction on one count of an indictment charging him and six other persons with the robbery of the Teachers' Credit Union in Kansas City, Missouri. Bryant claims on appeal that he should have been permitted to withdraw his plea of nolo contendere just prior to his scheduled sentencing and that the trial court erred in refusing to allow the withdrawal. We affirm the judgment of conviction.

The indictment charged Bryant with the robbery, or aiding and abetting the robbery, on November 7, 1979. In a separate count, not directly relevant here, the same charges were made against the same defendants in connection with the November 7 robbery of the Missouri Central Credit Union at a location adjacent to the Teachers' Credit Union. The additional defendants in each count were Kenneth G. Rayford; Nolden Garner,

Jr.; George W. Johnson; Raymond Young, Jr.; Michael W. Richardson; and Robert Jackson.

At arraignment on March 18, 1980, Bryant entered a not guilty plea to each of those two counts. The case was scheduled for trial on May 5, 1980. On that date Bryant, pursuant to a plea agreement with the United States Attorney, changed his plea to Count I to nolo contendere. The terms of the plea agreement, not relevant here, were disclosed to the court, and after conducting a very careful and complete rule eleven interrogation, Judge Sachs accepted the plea of nolo contendere as to a modified Count I and directed that "a judgment of guilty based on a plea of nolo contendere be entered." He did not question Bryant about the facts relating to the commission of the crime because the plea entered was nolo contendere and because he felt it could possibly incriminate some of his codefendants who had not been tried. He stated that he would await the presentence report before determining whether to go along with the plea bargain, and indicated his intention to so question Bryant if the plea bargain were accepted. Rayford also entered a nolo contendere plea on May 5, 1980. Garner had entered a nolo contendere plea prior to that time.

The defendants Richardson and Young were convicted at a trial ending on April 30. They were sentenced on June 6 to 15 years and 20 years respectively. Jackson and Johnson were acquitted after a trial which ended on June 5. It is significant that Bryant's nolo contendere plea was entered before Richardson and Young were sentenced and before Jackson and Johnson were tried. Bryant attempted to withdraw the plea on June 13, 1980, *after* Richardson and Young were sentenced and *after* the Jackson and Johnson acquittals. On June 13 Bryant was thus aware that two of his codefendants had been acquitted and two had been convicted and sentenced to long terms since he had entered his plea.

The trial court conducted hearings on the motion to withdraw the plea on July 3 and July 18, 1980. These hearings focused upon the reasons given by Bryant in support of his motion to withdraw. In a pleading filed with his motion, Bryant set forth the reasons as follows:

1. An alibi witness known to the defendant at the time which was originally set for his trial, but who was unavailable at that time, is now available to aid in the defense of this case.

2. Due to the fact that the cases of the other parties charged in this Indictment have been disposed of now, these parties are now newly available to aid in the defense of this case.

3. Information which became known during the trial of Michael W. Richardson and Raymond Young, Jr. and other information which became first known to the defendant during the trial of George W. Johnson and Robert L. Jackson are now available to the defendant for the aid of the defense of this case.

The alibi witness Bryant claimed to be newly available, Henry Powell, testified on July 18 to the effect that Bryant was in the auto shop where Bryant had formerly worked on one Wednesday morning, but was unable to say that it was the morning of the robbery. He was unable to even identify what month it was.

Point two related to the use of testimony by Garner and Rayford. Bryant attempted to show by his own testimony and by the testimony of Susan Garner, Garner's sister, that Garner, who had earlier been sentenced and was in prison, would now testify in Bryant's behalf. The evidence showed that the only expression of Garner's willingness to testify was communicated to Bryant *before* he entered his plea of nolo contendere, rather than after. Susan Garner indicated that she had not communicated with her brother in this regard.

Defense counsel, on July 3, advised the court that Rayford had also indicated that he would testify on behalf of Bryant. On July 18, counsel advised the court that he had talked to Rayford by telephone and that he "would not choose to call Rayford as a witness." He also indicated that after talking to Garner by telephone he would

use his testimony to impeach the credibility of two government witnesses, George Brown and Consuela Brown.

As to the third reason given in the suggestions in support of the motion to withdraw the plea, defense counsel was vague and presented no specific evidence or suggestions about what either Johnson or Jackson would add to his case.

■ The trial court, after conducting the two hearings, held in a written memorandum that

In the present case, defendant Bryant has been enabled to use the delay for testing purposes, as above noted. Without attributing bad faith calculations to defendant, the result is the same as if an intentional program of testing the Court's sentencing process had occurred. See *United States v. Kay*, 537 F.2d 1977 (9th Cir. 1976). Even more significantly, however, defendant Bryant let the "magic date" of June 2 go by without seeking to change his plea. The trial of his co-defendants Jackson and Johnson then began. Bryant would probably have been a welcome addition to that trial, if he had seen fit to gather his alleged new evidence diligently and ask for a change of plea. His current request for a separate trial of the much-litigated "credit union case" is unjustified. Where a defendant's plea has resulted in his elimination from a trial, and he thereafter seeks to withdraw the plea, "considerations applicable to post-conviction motions are appropriate." 8A *Moore's Federal Practice* 32–112.

He also held, correctly we think, that "[a] further reason for denying the motion is the deficiency of showing by defendant that his grounds for belatedly seeking a change of plea are well taken."

In analyzing the propriety of rejecting a motion to withdraw a plea of nolo contendere prior to sentencing, we turn first to Rule 32(d) of the Rules of Criminal Procedure which provides as follows:

(d) Withdrawal of Plea of Guilty. A motion to withdraw a plea of guilty or *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.

This court has held in prior cases that we will reverse the denial of a request to withdraw a guilty plea only for an abuse of the district court's discretion and that the burden is on the defendant to establish his grounds for withdrawal of the plea. *United States v. Boyd*, 610 F.2d 521, 524 (8th Cir. 1979), *cert. denied, sub nom. Clark v. United States*, 444 U.S. 1089, 100 S.Ct. 1052, 62 L.Ed.2d 777 (1980); *Pitt v. United States*, 378 F.2d 608, 611 (8th Cir. 1967).

■ We have further held that in determining whether there was an abuse of discretion in refusing the presentence withdrawal motion, that motion is to be judged on a "fair and just" standard which is more lenient than the standard used on a post-sentence request. *United States v. Lambros*, 544 F.2d 962, 965 (8th Cir. 1976), *cert. denied*, 430 U.S. 930, 97 S.Ct. 1550, 51 L.Ed.2d 774 (1977). In determining whether the decision on the motion was fair and just, it is appropriate to take into consideration the fact that the defendant waited until he knew the fate of his codefendants before seeking to withdraw the plea. *United States v. Boyd, supra*, 610 F.2d at 524; *Pitt v. United States, supra*, 378 F.2d at 611.

Another factor properly considered in the determination of whether a ruling is fair and just is the possible prejudice to the government that withdrawal of the plea would cause. Here there had already been three trials relating to this crime and Bryant was scheduled to be tried in the second one when he entered his plea. In a prior trial for the same crime a witness was shot the night before she was to testify which could possibly have caused some reluctance on the part of other necessary witnesses to testify a fourth time. Some of the witnesses are now in the penitentiary and may be reluctant to testify on behalf of the United States.

It is clear from the evidence adduced that the reasons given for wanting to withdraw the plea were pretextual. During the hearings related to these stated reasons they were each refuted and discredited. Not only did defendant not sustain his burden of proving these reasons, but he and the other witnesses, by their testimony, made it clear that the reasons given for the motion were a sham. This is a classic case of a defendant finding out what was likely to happen to him based on the fate suffered by his codefendants after the plea, and then deciding to back out of his plea bargain and take his chances that the government could not prove its case. The trial court correctly perceived this and denied the withdrawal motion.

The judgment of the district court is affirmed.